IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHN ROTH,

     Plaintiff,

 v.                           Case No. 3:18-cv-02196-BT

CANON SOLUTIONS AMERICA,
INC.,

     Defendant.

## **MEMORANDUM OPINION AND ORDER**

Before the Court in this civil action are Canon Solutions America, Inc.'s Second Motion for Judgment on the Pleadings (ECF No. 39) and Motion to Stay Discovery (ECF No. 42). For the reasons stated, the Second Motion for Judgment on the Pleadings is granted in part and denied in part, and the Motion to Stay Discovery is denied as moot.

### **Background**

Plaintiff John Roth (Roth) was 63 years old when he was terminated from his job as a National Technical Specialist for Defendant Canon Solutions America, Inc. (Canon). Am. Compl. 2, ¶ 6 (ECF No. 36). At the time he was fired, Roth had worked for Canon, or one of its predecessors, continuously for 28 years and was struggling to care for his aged mother who suffers from Alzheimer's disease and dementia. *Id.* at ¶¶ 5, 9. By this lawsuit, Roth alleges that in the twelve to fifteen months prior to his termination, Canon engaged in discriminatory conduct and

1

retaliated against him in violation of the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), and the Family Medical Leave Act (FMLA). *Id.* at 14-16, ¶¶ 44-67.

In his 54-page Amended Complaint, which is the live pleading in this action, Roth alleges that, in March 2015, a manager told him that Canon was targeting Roth for dismissal based on his age. *Id.* at 3-4, ¶ 10. Roth also describes a "Sales Kickoff" meeting in early 2016 where Canon presented a slide show discussing employees' ages; allegedly, the presenters conveyed a plan to lower the average employee age by terminating older employees. *Id.* at 4, ¶ 10. Roth further alleges that the following actions constitute age discrimination: (1) multiple times Canon sent him out of town where other specialists or local technicians could have completed the work; (2) Canon required him to spend six weeks physically manning a phone support line in Boca Raton, Florida, and Dallas, Texas, when it allegedly would have been easier and more cost-effective for Roth to do so from home as other specialists were permitted to do; and (3) Canon required him to perform week-long, 24-hour, on-call duty from his home every three to four weeks from January to May 2016 (allegedly more often than other specialists). *Id.* at 4, ¶ 11. Then, Canon introduced a retirement package which Roth alleges was intended to encourage older employees to voluntarily retire. *Id.* at 5, ¶ 12. Canon allegedly terminated several employees older than 55 years old and approached other older employees—including Roth—about accepting the retirement package. *Id.* Roth declined. *Id.*

Roth further avers that his mother was diagnosed with moderate-to-severe Alzheimer's disease and dementia in mid-2015. *Id.* at 5, ¶ 13. When Roth's mother first moved to Texas to live with Roth, Roth hired a full-time caregiver and was able to perform his work duties for Canon. *Id.* But when the caregiver took what was supposed to be a three-month absence, he had to take leave under the FMLA to care for his mother himself. *Id.* The caregiver, however, did not return from the absence. *Id.* After 10 weeks of FMLA leave, Roth returned to Canon with the hope he could work from home to care for his ailing mother. *Id.*

When Roth explained to Director Nick Thorne (Thorne) that he needed additional accommodations to care for his disabled mother, Thorne allegedly suggested Roth resign. *Id.* at 5-6, ¶ 14. Roth insisted on remaining a Canon employee. *Id.* Rather than permitting Roth to work from home, Thorne insisted that Roth take an additional two weeks of FMLA leave. *Id.* So, Roth began additional FMLA leave on August 8, 2016. *Id.* While on leave, Roth emailed Human Resources (HR) expressing his belief that he was being targeted for termination because of his age and explaining that his mother suffered from Alzheimer's disease and required his care. *Id.* at 6, ¶ 15. Roth copied Thorne on this email. *Id.* Roth received no response. *Id.*

Roth returned to work from his second leave on August 22, 2016, working both from the Dallas office and from home that week, as he claims was typical. *Id.* at 6, ¶ 16. However, Thorne purportedly instructed Roth's immediate supervisor not to permit Roth to work from home. *Id.* According to Roth, this was out of the

ordinary as he had been allowed to work from home in the past; Roth claims that, prior to taking FMLA leave, he worked from home roughly 50 percent of the time. *Id.* That same week, HR contacted Roth and asked him when he planned to return to work in his full capacity. *Id.* at 6, ¶ 17. He explained that he already *had* returned to work in his full capacity; however, he further explained that he could not travel out of town because of his mother's disability. *Id.* Later, HR contacted Roth again and offered him unprotected leave for an additional 30 days to care for his mother. *Id.* In response, Roth told HR he could work save for a restriction on his travel, which, according to Roth, Canon permitted many other employees in the past. *Id.*

Eventually, HR informed Roth that if he did not return to a full work schedule, then Canon would consider him to have resigned. *Id.* at 7, ¶ 18. Roth claims that he emphasized to Canon that he *had* returned to a full work schedule, and that he had not resigned. *Id.* Nevertheless, Roth claims Canon terminated him on August 29, 2016. *Id.* Roth avers that Canon sent Roth a letter informing him that he had abandoned his position, which Roth disputes. *Id.* at 7, ¶ 19.

On September 26, 2016, Roth submitted an intake questionnaire (the "Original Intake Questionnaire") to the Equal Employment Opportunity Commission (EEOC). *Id.* at 8, ¶¶ 21-22. On the Original Intake Questionnaire, Roth alleged he had been discriminated against on the basis of age and suffered "disability discrimination by association, mother." Pl.'s App. 11. On the form Roth also checked Box 1, a box indicating that he wished "to talk with an EEOC employee before deciding whether to file a charge," and further acknowledging that he had

by the Original Intake Questionnaire "not filed a charge with the EEOC." *Id.* at 3. However, Roth purportedly understood completion of the Original Intake Questionnaire to satisfy his obligation to file a charge with the EEOC. Am. Compl. 8, ¶ 21; Pl.'s App. 6.

By December 2016, the EEOC had not contacted Roth regarding his claim, so he visited the EEOC's Dallas field office to check on the status of his filing. Am. Compl. 9, ¶ 24; Pl.'s App. 6. At this visit, Roth claims he brought another copy of an intake questionnaire (the "Secondary Intake Questionnaire") that he had rewritten because he failed to keep a copy of the Original Intake Questionnaire. *See* Am. Compl. 9, ¶ 24; Pl's App. 16-19. Roth pleads that in the Secondary Intake Questionnaire, he checked Box 2, a box declaring "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I describe above." Am. Compl. 9, ¶ 24. However, when Roth tried to submit the Secondary Intake Questionnaire in person, an EEOC employee purportedly informed him that he had already filed a charge with the EEOC, that his file was open, and that his charge was being investigated. *Id.* at ¶ 25. Roth claims that this EEOC employee provided a charge number—450-2016-04487—assigned to Roth's allegations of discrimination. *Id.* at ¶ 26; Pl.'s App 7.

Roth attempted to follow up with the EEOC several times via email and phone. Am. Compl. 10, ¶ 28. For example, on December 14, 2016, Roth contacted his assigned EEOC investigator to check on his complaint but received no response. *Id.* Eventually, Roth retained counsel, and his counsel also tried to

contact the EEOC regarding the status of what Roth believed to be a timely charge. *Id.* at ¶ 29. Later, when Roth called the EEOC, an EEOC representative reportedly explained to Roth that the EEOC was backlogged and that the individual formerly assigned to Roth's case was no longer working at the agency. *Id.* at ¶ 30. Instead, the Acting District Director of the EEOC, Belinda McCallister (McCallister), was now managing Roth's case. *Id.* On June 15, 2017, Roth's counsel at the time sent a letter to the EEOC inquiring into the status of Roth's charge. *Id.* at ¶ 31.

Roth believes that the EEOC "did no work" on his case "at all" from March to June 2017, at which time Roth and McCallister spoke via telephone. *Id.* at 11, ¶ 32. On this call, McCallister never told Roth he had not filed a charge or that the deadline to do so was (then) less than two weeks away. *Id.*; Pl.'s App. 8. Indeed, Roth answered affirmatively when McCallister asked him if he still wished to pursue the charge. Am. Compl. 11, ¶ 32. McCallister then told Roth a new case worker would interview him the following week because his previous case worker had retired. *Id.* On the same day, the EEOC reassigned Roth's claim to EEOC Investigator Karen Heard (Heard). *Id.* at 11, ¶ 33.

Heard called Roth on June 19, 2017 and told him that she had his case file and asked that Roth provide her with any relevant additional information. *Id.* at 11, ¶ 34. Roth avers that the EEOC, through Heard, never indicated that he had not filed a formal charge of discrimination. *Id.* In October 2017, the EEOC finally notified Canon of Roth's charge in which Roth had alleged both age and disability discrimination. *Id.* at 11, ¶ 35; Pl.'s App. 33-34. The notice acknowledges that Roth

had not yet executed an EEOC Form 5, commonly referred to as the "Charge of Discrimination." *See* Pl.'s App. 34. Despite this, the notice states that "*a charge* of employment discrimination has been filed against [Canon]." *Id.* (emphasis added). The same day, Heard mailed Roth a completed formal charge for his review and signature, which Roth immediately signed and returned on October 30, 2017 (the "Original Charge"). Am. Compl. 12, ¶ 38; Pl.'s App. 8; 28.

Then, on March 20, 2018, Roth executed an amended charge of discrimination (the "Amended Charge"). Pl.'s App. 28. The EEOC accepted this amendment. *See id.* On May 21, 2018, Roth requested a Notice of Right to Sue. Am. Compl. 13, ¶ 41. The EEOC issued the Notice of Right to Sue on May 23, 2018, which required Roth to file his claims in court by August 21, 2018. *Id.* Roth filed his original Complaint in this case on that date. Compl. (ECF No. 1). Canon timely responded, filing an Answer and its First Motion for Judgment on the Pleadings.

Roth subsequently filed the Amended Complaint in which he pleads the following causes of action: (1) associational discrimination under ADA; (2) age discrimination under the ADEA; (3) retaliation under the ADEA; and (4) retaliation under the FMLA. Am. Compl. 14-16, ¶¶ 44-67. Canon filed an Answer (ECF No. 38) and its Second Motion for Judgment on the Pleadings. By its motion, Canon argues Roth failed to file a timely charge of discrimination with the EEOC, and therefore his ADEA and ADA claims are time-barred and fail as a matter of law. Br. Support Second Mot. J. Pleadings 8 (ECF No. 40) (Def.'s Br.). Canon also argues that Roth's ADA claim fails because the Fifth Circuit has not recognized a

cause of action for associational disability discrimination under the ADA (*id.* at 15) and because Roth has failed to state a claim for associational disability discrimination (*id.* at 16). Canon further argues that Roth has failed to adequately plead a cause of action for retaliation under the FMLA. *Id.* at 18. Canon also filed a motion to stay discovery pending resolution of its motion for judgment on the pleadings. Mot. Stay Disc. 1. Both motions have been fully briefed and argued, and they are ripe for determination.

## Legal Standard

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (internal citations omitted). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010).

When deciding a 12(b)(6) motion for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(c) motion for judgment on the pleadings, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its

face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim." *Causey*

*v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

## Analysis

<u>Canon's Motion is Not Premature.</u>

As a preliminary matter, Roth argues that judgment on the pleadings is improper because Canon has raised an affirmative defense—that Roth failed to timely file an EEOC charge and properly exhaust his administrative remedies—which Roth is entitled to counter. Resp. Mot. J. Pleadings 10-11 (ECF No. 46) (Resp.). Roth appears to argue that judgment on the pleadings is premature whenever the defendant raises an affirmative defense because facts relevant to the defense and, specifically, to counter the defense do not necessarily appear in the pleadings. *See* Resp. 10.

Here, however, Canon's affirmative defense is relevant only to his ADEA and ADA claims; Canon's defense would not bar his FMLA claim. *Zavala v. Silverleaf Resorts, Inc.*, 2018 WL 6252551, at *2 (N.D. Tex. Nov. 2, 2018), *rec. adopted*, 2018 WL 6250547 (N.D. Tex. Nov. 29, 2018) ("Unlike the requirements for bringing a claim under [the ADA] . . ., a plaintiff is not required to file an EEOC charge to pursue an FMLA claim"); *Cookston v. Freeman, Inc.*, 1999 WL 714760, at *4 n.7 (N.D. Tex. Sept. 14, 1999) ("The court notes that an EEOC charge need not be filed in an FMLA action."); *Wilson v. Dall. Indep. Sch. Dist.*, 1998 WL 47635, at *5 (N.D. Tex. Jan. 30, 1998) (concluding that courts have not required plaintiffs to exhaust their administrative remedies before pursuing FMLA claims).

Further, Roth asserts equitable tolling, his counter to Canon's affirmative defense to his ADEA and ADA claims, in the Amended Complaint and pleads specific facts to support his counter. Am. Compl. 13-14, ¶ 42. At this stage in the proceedings, no further development of the record is necessary because the Court must accept as true the facts alleged in the Amended Complaint. Given these circumstances, Canon's Rule 12(c) motion is not premature. *See Clemmer v. Irving Indep. Sch. Dist.*, 2015 WL 1757358, at *2 (N.D. Tex. Apr. 17, 2015) (recognizing dismissal based on a Rule 12(c) motion may be appropriate if the successful affirmative defense appears clearly on the face of the pleadings).

<u>Roth's ADA Associational Discrimination Claim is Not Cognizable.</u>

Roth alleges Canon fired him because he requested accommodations for his mother's disability. Am. Compl. 15, ¶¶ 54-55. Under the ADA, an employer may not "exclud[e] or otherwise den[y] equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). Despite this language, the Fifth Circuit has never recognized a cause of action for "associational discrimination" based on a disability. *Grimes v. Wal-Mart Stores Tex., L.L.C.*, 505 F. App'x 376, 380 n.1 (5th Cir. 2013) (per curiam) ("The Fifth Circuit has not explicitly recognized a cause of action for discrimination based on association with a handicapped individual, nor [has it] described what such a claim requires."). In fact, when recently presented with the opportunity, the Fifth Circuit expressly declined to address the viability of associational discrimination claims.

*See Spencer v. FEI, Inc.*, 725 F. App'x 263, 267 (5th Cir. 2018). The Fifth Circuit has further instructed that its opinions discussing associational discrimination claims should not be construed as recognizing a cause of action for associational discrimination based on disability. *Grimes*, 505 F. App'x at 380 n.1. In view of this precedent, the Court finds that no cognizable cause of action for associational discrimination exists in this jurisdiction, and Canon is entitled to judgment on the pleadings on Roth's ADA claim.[1]

<u>Canon is Not Entitled to Judgment on Roth's ADEA Discrimination Claim.</u>

The ADEA provides that an employee may seek judicial relief for discriminatory employment practices based on age. 29 U.S.C. § 626(c)(1). However, the aggrieved employee must first exhaust his administrative remedies by filing a timely charge of discrimination with the EEOC; it is a procedural prerequisite to a plaintiff's suit. 29 U.S.C. § 626(d)(1); *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1850-51 (2019). In Texas, the limitations period for filing a

---

[1] In jurisdictions that recognize a cause of action for associational discrimination based on a disability, the right to an accommodation for a disability only extends to disabled employees and not to nondisabled relatives of disabled persons. *Larimer v. I.B.M. Corp.*, 370 F.3d 698, 700 (7th Cir. 2004); *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 433 (2d Cir. 2016) (quoting *Pennington v. Wal-Mart Stores E., LP*, 2014 WL 1259727, at *5 (N.D. Ala. Mar. 26, 2014)) ("[The ADA] does not require employers to make reasonable accommodations for employees to care for their disabled relatives")). Here, Roth alleges that Canon fired him because he requested accommodations for his mother's disability. *See* Am. Compl. 15, ¶ 54. Therefore, even if the Fifth Circuit recognized a claim for associational discrimination based on a disability, the Court would find that Canon is entitled to judgment on the pleadings because the facts alleged in the Amended Complaint fail to state a claim for relief.

discrimination charge with the EEOC is 300 days from the complained of act. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 384 (5th Cir. 2002).

In this case, Roth claims Canon terminated him on August 29, 2016. He was therefore required to file a charge with the EEOC before June 26, 2017. Nowhere in the Amended Complaint does Roth plead that he timely filed a charge of discrimination with the EEOC. Indeed, Roth pleads that he did not file his Original Charge until October 30, 2017. Am. Compl. 12, ¶ 38; Pl.'s App. 8; 28.

Roth argues, however, that the Original Intake Questionnaire he filed on September 26, 2016—the only filing Roth submitted to the EEOC within the 300-day deadline—constitutes a formal charge. Am. Compl. 8, ¶ 21. For a filing with the EEOC to constitute a formal charge, it must contain information such that it can be reasonably construed as a request for the EEOC to take action on the employee's behalf. *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). Thus, an EEOC intake questionnaire can satisfy the charge requirement in some cases. *See id.* at 405 (holding that because intake questionnaire was accompanied by a detailed affidavit that asked EEOC to "[p]lease force [employer] to end [its] age discrimination," it constituted a charge).

Despite what Roth may have understood the legal effect of the Original Intake Questionnaire to be, it cannot reasonably be construed as a request for the EEOC to take legal action as is required by *Holowecki*. On the Original Intake Questionnaire, Roth did not check Box 2—the box that declares "I want to file a charge of discrimination." Pl.'s App. 13. Instead, Roth checked Box 1, which states,

"I want to talk to an EEOC employee before deciding whether to file a charge. *I understand that by checking this box, I have not filed a charge with the EEOC.*" *Id.* (emphasis added). This language unequivocally confirms that Roth did not intend for the EEOC to take any action on his behalf based on the Original Intake Questionnaire. The Original Intake Questionnaire therefore is not a formal charge. And, being that it is the only filing Roth submitted to the EEOC within the 300-day deadline, Roth did not file a timely charge.

This failure is not fatal to Roth's ADEA discrimination claim, however. The 300-day timeline in which a plaintiff must file a formal charge with the EEOC may be equitably tolled in certain circumstances, including: (1) if there is a suit pending between the same parties in the wrong forum; (2) if the plaintiff is unaware of the facts giving rise to the claim because of the defendant's intentional concealment of them; or (3) if the EEOC misled the plaintiff about the nature of his rights. *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citing *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995) (per curiam)). To establish an equitable tolling claim based on the third ground, a plaintiff must show that the EEOC gave him "affirmatively wrong" information causing his untimely filing. *Ramirez v. City of San Antonio*, 312 F.3d 178, 184 (5th Cir. 2002).

Here, Roth pleads facts that give rise to a plausible equitable tolling claim on the grounds that he was misled by the EEOC. Assuming Roth's allegations are true, which the Court must do at this stage, Roth inquired with the EEOC regarding the status of his Original Intake Questionnaire after hearing nothing for a few

months. Am. Compl. 9, ¶ 24. At that point, Roth alleges, the EEOC intake clerk with whom he spoke told him that he had filed a charge and also gave him a charge number, writing it down on a sticky note for him. *Id.* at 9, ¶ 26. If these allegations are true, the EEOC gave Roth affirmatively incorrect information, as Roth had at that point *not* filed a charge. The clerk further told Roth that the EEOC was investigating the matter, but it could take up to one year to hear back from the EEOC regarding the matter. *Id.* at 9, ¶¶ 25; 26.

Later, Roth contacted an investigator assigned to his matter. Am. Compl. 11, ¶ 32. In that conversation, the investigator allegedly asked Roth whether he still wished to pursue his charge. *Id.* The investigator's reference to the "charge" reinforced the prior incorrect statement by the intake clerk—that Roth had filed a charge and the EEOC was investigating. That the EEOC actually issued Canon a formal notification of Roth's discrimination charge (Pl.'s App. 33) shows, not only did Roth rely on the EEOC's affirmatively wrong information that he had filed a formal charge when he had not, but the EEOC also relied on that wrong information. And that the EEOC proceeded in this fashion increases the plausibility that the EEOC represented to Roth he had filed a formal charge. In other words, it increases the plausibility that the EEOC misled Roth, and Roth is entitled to equitable tolling of the 300-day timeline for filing a charge. If the EEOC had correctly informed Roth in December 2016 that he had not filed a formal charge, he would have submitted the Secondary Intake Questionnaire, in which he checked Box 2 declaring "I want to file a charge of discrimination, and I authorize

the EEOC to look into the discrimination I describe above." And in that event, Roth would have timely filed a charge.

Canon argues that Roth is ineligible for equitable tolling because he retained counsel before the 300-day filing deadline. *See* Def.'s Br. 13. But the fact that a claimant is represented by counsel does not automatically bar the application of equitable tolling. *Granger*, 636 F.3d at 713. In *Granger*, the plaintiffs' attorney filed discrimination charges in the wrong government office. *Id.* Rather than binding the plaintiffs to their attorney's failings, the Court noted that the plaintiffs were diligent in asserting their rights—their attorney's staff had made at least six phone calls to that (albeit, wrong) office regarding the plaintiffs' charges—and each time personnel at that office assured the caller the complaints were under investigation. *Id.* Equitable tolling was therefore a fitting remedy for the plaintiffs, who were represented. *Id.* As pleaded in this case, Roth and his counsel exercised the diligence *Granger* seems to require. Roth called and emailed with no response, ultimately prompting him to show up at the EEOC in person for an update in December 2016. *See, e.g.*, Pl.'s App. 7; Am. Compl. 10, ¶ 30. Similarly, his counsel called and sent letters requesting updates. Am. Compl. 10, ¶ 30; *Id.* at 10, ¶ 31. Each time Roth or his counsel made contact, the EEOC responded with affirmatively wrong information implying that Roth had filed a formal charge.

In this case, the fact that Roth was represented during part of the time he maintains the limitations period should be equitably tolled does not negate the affirmative misinformation the EEOC gave Roth. In fact, Roth was supplied a

charge number approximately one month before he retained counsel. *Compare* Pl.'s App. 7 (explaining that intake clerk gave Roth a charge number on a sticky note when he visited EEOC in December), *with id.* at 22 (reflecting that email correspondence between Roth and counsel occurred in late January). Roth then relayed his charge number to his counsel. *See id.* at 23. Even for an attorney who is familiar with EEOC claims processes, it is reasonable to conclude that a client with an EEOC charge number and an investigator on his case has already fulfilled the first step of filing an EEOC charge. This is especially true in this case because Roth alleges he did not keep a copy of the Original Intake Questionnaire.

If Roth's allegations are true, the EEOC supplied him with affirmative misinformation, and misleading by the EEOC is one ground for equitable tolling. Roth has pleaded facts such that he is entitled to exploration of his equitable tolling argument, and judgment on the merits is therefore inappropriate as to Roth's ADEA discrimination claim at this juncture.

<u>Canon is Entitled to Judgment on Roth's ADEA Retaliation Claim.</u>

The Court comes to a different conclusion with respect to Roth's ADEA retaliation claim. The ADEA permits an employee to seek judicial relief for adverse employment actions done in retaliation for asserting a right under the ADEA. 29 U.S.C. § 626(c)(1). To state an ADEA retaliation claim, a plaintiff must allege facts to show (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action. *McDaniel v. Shell Oil Co.*, 350 F.

App'x 924, 927 (5th Cir. 2009). Protected activity includes complaining about alleged workplace mistreatment. *See Fanning v. Metro. Transit Auth. of Harris Cty., Tex.*, 141 F. App'x 311, 314 (5th Cir. 2005) (per curiam) (holding that filing a charge of discrimination and reporting discriminatory practices to a supervisor are protected activities under the ADEA). But the exhaustion requirement applies to retaliation claims in the same manner that it applies to discrimination claims. *See Eberle v. Gonzales*, 240 F. App'x 622, 626 (5th Cir. 2007) (per curiam) (requiring employee to exhaust his administrative remedies before raising retaliation claim under ADEA, where alleged retaliation occurred before employee filed discrimination charge with EEOC).

Here, Roth alleges that he "complained that he was being treated differently because of his age and was terminated shortly thereafter." Am. Compl. 15, ¶ 49. However, Roth did not claim retaliation until he filed the Amended Charge on March 20, 2018. Pl's App. 26 (Roth's counsel declaring, "a retaliation charge was also appropriate . . . . Accordingly, . . . Plaintiff executed an Amended Charge of Discrimination . . . adding a charge of retaliation."). As discussed above, Roth had to bring his claims to the EEOC before June 26, 2017. But Roth did not file the Amended Charge until November 2017. His retaliation charge, therefore is untimely. Because Roth failed to timely exhaust his retaliation claim, Canon is entitled to judgment on that claim.

Roth argues that his retaliation claim should relate back to his ADEA discrimination claim asserted in the Original Charge. Resp. 18. He further asserts

that the Original Charge and the Original Intake Questionnaire provide the details underlying both his ADEA discrimination and retaliation claims. *Id.* Generally, however, an amended charge that raises a new legal theory cannot relate back to an original charge of discrimination. *Manning*, 332 F.3d at 878. Discrimination and retaliation charges are distinct, and the allegation of one does not exhaust remedies as to the other. *Lavigne v. Cajun Deep Foundations, L.L.C.*, 654 F. App'x 640, 648 (5th Cir. 2016) (internal quotation marks and citations omitted). Therefore, a claim of retaliation can only relate back to a claim of discrimination if the facts supporting each are "essentially the same." *Id.* (quoting *Manning*, 332 F.3d at 879).

The Fifth Circuit has provided some guidance on determining whether the facts supporting a discrimination claim and a retaliation claim are essentially the same. In *Lavigne*, the plaintiff alleged that he was fired in retaliation for complaining to his supervisor about his pay and others' racially insensitive remarks. *Id.* However, his original charge stated only that he was paid less than other employees of different races and "treated differently . . . compared to his white counterparts." *Id.* The plaintiff also did not check the appropriate box to claim retaliation. *Id.* The Court held that the plaintiff's retaliation claim did not relate back to his discrimination claim because he did not select the appropriate box for retaliation and did not allege facts relevant to retaliation in the original charge. *Id.*

In this case, the Amended Charge in which retaliation was first asserted does not relate back to the Original Charge. Neither the Original Intake Questionnaire nor the Original Charge allege facts to support a claim for ADEA retaliation. The Original Charge also does not contain a check in the appropriate box to claim retaliation. Pl.'s App. 25. And, relevant to the ADEA, the Original Charge only states, "I believe I have been discriminated against because of my age, 63[,] in violation of the Age Discrimination in Employment Act of 1967." *Id.* While Roth does allege in his Amended Complaint that he conveyed his belief to HR (and to Thorne) that he was being targeted for his age (Am. Compl. 6, ¶ 15), the Original Charge does not refer to those communications (*see* Pl.'s App. 25). Likewise, neither Roth's Original Intake Questionnaire nor the two-page account he attached to it mentions that he reached out to anyone—in HR or otherwise—with any concerns about being targeted for his age. *See* Pl.'s App. 10-15. In the relevant documents, the Original Charge and the Original Intake Questionnaire, Roth did not allege that he complained about being targeted for his age, a fact that makes up an essential component of his ADEA retaliation claim.

Because neither Roth's Original Intake Questionnaire nor his Original Charge alleges facts to support a claim for ADEA retaliation, his Amended Charge does not relate back. Roth's ADEA retaliation claim, therefore, is untimely, and Canon is entitled to judgment on the pleadings with respect to it.

<u>Roth's FMLA Retaliation Claim Survives Canon's Rule 12(c) Motion.</u>

The FMLA "entitle[s] employees to take leave from work for medical reasons, for the birth or adoption of a child, *or for the care of a* child, spouse, or *parent who has a serious health condition.*" 29 U.S.C. § 2601(b)(2) (emphasis added). The statute also prohibits employers from discharging or otherwise discriminating against an individual for opposing any workplace practice prohibited by the FMLA. *Id.* § 2615(a)(2). Accordingly, it is unlawful for employers to terminate or otherwise punish employees for having exercised or attempted to exercise their right to FMLA leave. 29 C.F.R. § 825.220(c). To avoid judgment on the pleadings on an FMLA retaliation claim, a plaintiff must allege facts to show (1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) the adverse action was taken because he sought protection under the FMLA. *Elsensohn v. St. Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (per curiam). Canon attacks Roth's FMLA retaliation claim on the ground that he has not pleaded enough facts to establish a causal connection. *See* Def.'s Br. 19-20.

A plaintiff can satisfy the third element, the causal connection requirement, by alleging facts to demonstrate a close temporal proximity between the protected activity and the adverse employment action. *See Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 401-02 (5th Cir. 2012). The Supreme Court has acknowledged that, standing alone, the proximity must be "very close." *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Mere days between the protected activity and

the adverse employment action is sufficient to raise an inference that a causal connection exists. *Stephenson v. Nokia Inc.*, 2008 WL 2669492, at *6 (N.D. Tex. May 1, 2008). But a span of more than two months is not sufficiently close to establish the causal connection required for an FMLA retaliation claim. *Amsel*, 464 F. App'x at 402. When an employee takes FMLA-protected leave and is terminated after returning, the relevant date for determining temporal proximity to an adverse employment action is the date the leave ended. *See Amsel*, 464 F. App'x at 401-02 ("[T]he only protected activity at issue here is [the plaintiff's] FMLA leave, *which ended on* April 25, 2007, more than two months prior to his dismissal.") (emphasis added).

In this case, Roth alleges he returned from his first FMLA leave on August 3, 2016. Am. Compl. 5, ¶ 13. At Canon's urging, he took another FMLA leave shortly after that, returning to work on August 22, 2016. Am. Compl. 6, ¶ 14. Roth was terminated on August 29, 2016 (*Id.* at 7, ¶ 18). Roth was terminated less than one month after first returning from FMLA leave and only a few days after returning from another period of leave. Such a short time period between the expiration of Roth's second period of protected FMLA leave and his termination raises the inference his termination was retaliatory. And, while the time period between the end of his initial leave and his termination is a little longer—approaching one month—Roth nonetheless survives 12(c) dismissal of this claim. The facts as Roth has pleaded them allege a close enough temporal proximity between his FMLA leaves and his termination that a legal inference of a causal connection between

the two events arises. Roth thus has sufficiently pleaded a claim for FMLA retaliation, and Canon is not entitled to judgment on the pleadings as to this claim.

**Conclusion**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Canon's Second Motion for Judgment on the Pleadings (ECF No. 39). The Court grants Canon's motion as to Roth's claim for associational discrimination under the ADA and for retaliation under the ADEA. Those claims are DISMISSED with prejudice. The Court denies the motion as to Roth's remaining claims for age discrimination under the ADEA and FMLA retaliation.

Because Canon's Motion to Stay Discovery (ECF No. 42) seeks postponement of discovery pending resolution of its Second Motion for Judgment on the Pleadings, the Court DENIES Canon's Motion to Stay Discovery as moot. The Court will enter a separate Scheduling Order establishing a deadline for discovery and other pretrial matters.

**SO ORDERED**.

September 23, 2019.

_____
REBECCA RUTHERFORD
U.S. MAGISTRATE JUDGE